*In re Oriental Republic of Uruguay*, 806 F.Supp. 42, 46 (D.Del.1992).[1]

Civ. A. No. 90–404–SLR.

United States District Court,
D. Delaware.

March 18, 1993.

---

Randall E. Robbins, of Ashby & Geddes, Wilmington, DE, for plaintiffs Oriental Republic Uruguay, Presidente Rivera, Servicio de Bugues Auxiliares de La Armada and Captain Raul DiBarrart.

Jeanne L. Langdon, and Keith A. Trostle, of Delaware Dept. of Justice, Wilmington, DE, for claimant State of Delaware.

Michael B. McCauley, of Palmer, Biezup & Henderson, Wilmington, DE, and Kevin G. O'Donovan, of Palmer, Biezup & Henderson, Philadelphia, PA, for claimant Delaware Terminal Co.

Peter E. Hess, Wilmington, DE, for claimants I Did the Delaware, Old Seventh Street Boat Yard, Inc., Up the Creek Restaurant and Bar, Inc., and Phillips Holding Co., Ltd.

Jeffrey Weiner, of Law Offices of Jeffrey Weiner, Wilmington, DE, and Gerald J. Williams, Mark R. Cuker, and Alan H. Casper, of Williams & Cuker, Philadelphia, PA, for claimants Penns Grove New Jersey Residents.

Paul M. Lukoff, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, DE, and Edward C. Radzik, and James P. Krauzlis, of Donovan, Parry, Walsh & Repetto, New York City, for claimant Petroleo Brasileiro S.A.

Wanda Chin Monahan, of the Department of Law and Public Safety, Div. of Law, Trenton, NJ, and Martin J. McHugh, of the Hazardous Waste Litigation Section, Div. of Law, Trenton, NJ, for claimant State of New Jersey.

James S. Green, of Duane, Morris & Heckscher, Wilmington, DE, and Francis J. Deasey, of Deasey, Mahoney & Bender, Ltd., Philadelphia, PA, for claimant Sun Refining and Marketing Co.

Patricia C. Hannigan, of the U.S. Attorney's Office, Wilmington, DE, Michael McIntyre, of Environment & Natural Resources Div., EES, Washington, DC, and Peter F. Frost, of the Torts Branch, Civ. Div., Washington, DC, for claimant U.S.

## MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

■ Before the Court is the State of Delaware's motion for partial summary judgment on the issue of whether the Delaware Oil Pollution Liability Act ("DOPLA" or "the Act"), 7 Del.C. Chapter 62, under which the Oriental Republic of Uruguay (hereinafter "Limitation Plaintiff") already has been found to be liable both for compensatory damages and for civil penalties (see D.I. 136; D.I. 137), imposes liability for each day during which oil is discharged from a vessel, as Limitation Plaintiff argues, or for each day during which oil is in the water as a result of the oil spill, as State of Delaware argues. For the reasons that follow, the Court concludes that the provisions of DOPLA applicable to the case at bar impose liability for civil penalties only for each day during which oil actually was discharged from the vessel.

*Discussion*

DOPLA provides that "[t]he discharge of oil which causes an incident is prohibited." 7 Del.C. § 6203. In its prior Memorandum Opinion, the Court determined that this provision "prohibits discharges of oil into or upon the waters and lands of the State. *Id.*[1] DOPLA establishes a standard of strict liability for such discharges, subject only to certain enumerated statutory defenses[2]."

---

[1] The Delaware Act provides that "the discharge of oil which causes an incident is prohibited." *Id.* § 6203. The term "discharge" is defined as "any emission, intentional or unintentional, and shall include spilling, leaking, pumping, pouring, emptying or dumping." *Id.* § 6202(4). The term "incident" is defined as "any occurrence or series of occurrences, involving one or more vessels ... which causes or poses any threat of oil pollution in or upon the waters and lands of the State." *Id.* § 6202(7). "Oil pollution" is defined under the Act as "any discharge of oil that results in a film on, emulsion in or sludge beneath the waters of the State or its shoreline." *Id.* § 6202(9).

[2] The Delaware Act provides an exception to liability "[t]o the extent that the incident is caused by an act of war, hostilities, civil war or insurrection, or by a natural phenomenon of an

(D.I. 136 at 9 (footnotes in original)) Since Limitation Plaintiff conceded that the PRESIDENTE RIVERA had discharged a massive quantity of oil into the Delaware River on or around June 24, 1989, the Court concluded that Limitation Plaintiff was liable under the Act. The Court left open, however, the legal issue of whether the Act imposes liability for civil penalties according to the number of days that the vessel discharged oil or according to the number of days that oil from the spill remained in the water. (See D.I. 136 at 11)

The provision of DOPLA which imposes civil penalties for violations of the Act provides that "[a]ny person who violates a provision of this chapter or any rule or regulation promulgated thereunder shall be liable ... for a civil penalty of not less than $1,000 nor more than $10,000 for each day of violation." 7 Del.C. § 6205(a). As related above, the provision of the Act that Limitation Plaintiff violated is section 6203, which prohibits "[t]he discharge of oil which causes an incident." The Court interprets this provision as setting forth two requirements for a finding that DOPLA was violated. First, there must be a "discharge of oil." Second, the discharge of oil must "cause an incident." If either of these two elements is not present, then a violation of section 6203 does not arise.

Since the penalty provision discussed above imposes civil penalties "for each day of violation," and since a "violation" under section 6203 requires both that there be a "discharge of oil" and that the discharge "cause an incident," it is clear that any particular day properly can be considered a "day of violation" only if there is a finding that a "discharge of oil" occurred on that day and that the discharge "cause[d] an incident" on that day. If either element is missing, then that particular day cannot properly be regarded as a "day of violation." As noted above, the term "discharge" is defined under the Act as "any emission, intentional or unintentional, and shall include spilling, leaking, pumping, pouring, emptying or dumping."

Id. § 6202(4). Accordingly, a "day of violation" will not occur unless there was, on that particular day, a spilling, leaking or other form of discharge of oil from the vessel.

Delaware contends that the Act "is designed to punish 'incidents' and to coerce prompt clean up." (D.I. 182 at 5) The Court acknowledges that one of the Act's purposes is "to require the prompt containment and removal of pollution occasioned" by the spillage of oil from tanker vessels. See 7 Del.C. § 6201. Said purpose, however, does not give this Court authority to read provisions into the Act which are not present. Delaware essentially asks the Court to construe section 6205(a) of the Act as providing that a "day of violation" occurs on each day during which there is an "incident." However, as discussed above, section 6205(a) provides that a civil penalty shall be imposed for each day during which a "violation" of the Act occurs. Again, violation of section 6203 of DOPLA is the "violation" with which Limitation Plaintiff is charged and section 6203 is not violated on a particular day unless there was a discharge of oil on that day.

Moreover, the Act contains a specific provision which effectuates DOPLA's stated purpose "to require the prompt containment and removal of pollution occasioned" by the spillage of oil from tanker vessels. Specifically, DOPLA section 6204 provides as follows:

### Removal of illegal discharge.

Any person determined by the Secretary to be responsible for causing an incident shall immediately undertake to remove such oil pollution to the Secretary's satisfaction. If the person responsible fails immediately to undertake to remove the oil pollution to the Secretary's satisfaction, the Secretary may undertake the removal of such oil pollution and may retain agents and contractors for such purpose who shall operate under the direction of the Secretary. The Secretary may authorize a third person, affected by such oil pollution, to

unforeseen, exceptional, inevitable and irresistible character...." Id. § 6208(c). Limitation Plaintiff has not raised this or any other defense or exception to DOPLA liability, nor is there any

evidence contained in the record indicating that this exception to liability applies to the instant case.

expend funds to remove said oil pollution at the expense of the person responsible for same.

Id. § 6204.[3]

■ Section 6204 is significant here for an array of reasons. Delaware has not asserted that Limitation Plaintiff violated section 6204 by failing to "immediately undertake to remove ... oil pollution [from the PRESIDENTE RIVERA spill] to the Secretary's satisfaction." Indeed, it is undisputed that Limitation Plaintiff undertook massive and prompt clean-up efforts costing nearly $9 million. (*See* D.I. 107 at A–68) The Court assumes that Delaware has not claimed violation of section 6204 due to Limitation Plaintiff's prompt clean-up efforts. Therefore, DOPLA's goal of encouraging prompt clean-up of oil pollution resulting from vessel spills was achieved with respect to the PRESIDENTE RIVERA incident. Additionally, the reference in the heading to section 6204 to "illegal discharge[s]," as opposed to "illegal *incidents*," further supports the conclusion that DOPLA seeks to impose liability for each day that an "illegal discharge" occurs. Finally, the Court is convinced that the statement in section 6201 of the Act to one of its purposes being "to require the prompt containment and removal of [oil] pollution" resulting from an illegal discharge is in reference to section 6204, which obviously encourages prompt clean-up.[4] Accordingly, DOPLA civil penalties may be imposed for days during which oil remains in the water, without any discharge occurring on that day, where the failure to promptly remove the oil pollution and the act of allowing the oil to remain in the water constitutes a violation of section 6204.

Since section 6203 clearly and unequivocally provides that "*discharge* of oil which causes an incident" shall constitute a violation of the Act, a violation of *this section* cannot be said to have occurred on a given day unless there was a "discharge" of oil on that day. If the Delaware legislature sought to impose liability under section 6203 and section 6205(a) for each day during which oil was in the water or each day of an "incident", then it certainly could have drafted the Act so as to achieve such a result. However, the plain language of the Act unambiguously provides that liability for civil penalties is to be imposed under section 6203 and section 6205(a) only for each day during which a discharge of oil occurred.

In support of its position, Delaware relies upon a decision of the Delaware Supreme Court, namely, *Dover Products Co., Inc. v. Olney*, 428 A.2d 18 (Del.Supr.1981), which involved application of the Delaware Environmental Control Act ("DECA"), 7 Del.C. Chapter 60. In *Dover Products*, the owner/operator of a rendering facility was found to be liable under DECA in connection with the dumping of nearly 10 tons of "dead, rotting chickens" at the operator's plant. The trial court determined that the operator was liable under DECA and regulations promulgated pursuant thereto for civil penalties both with respect to the day the chickens were dumped and as to the following day when the chickens were left at the operator's plant and continued to emit air pollution.

The Delaware Supreme Court reversed the trial court's finding that the operator was liable for the day of dumping because it was undisputed that "'an unknown third party, without authorization', dumped the dead chickens at Dover's plant." *Dover Products Co., Inc.*, 428 A.2d at 19. In concluding that the operator *might* be liable for *negligently* allowing the dead chickens to continue pollut-

**3.** It should be noted that any expenses incurred by the Secretary in removing oil pollution pursuant to section 6204 are recoverable under the Act. *See id.* § 6205(c).

**4.** DOPLA creates a powerful incentive structure, through section 6204 and section 6205, which strongly encourages prompt clean-up of oil spills. First, section 6204 and section 6205(a) together impose civil penalties for failure to comply with section 6204's requirement that the responsible party promptly undertake clean-up efforts. Second, in the event that the responsible party (here Limitation Plaintiff) does not comply with section 6204 by failing to undertake prompt clean-up efforts, section 6204 and section 6205(c) together obligate the responsible party to reimburse the Secretary and any "affected" third party authorized by the Secretary to perform his own clean-up efforts for expenses incurred in connection with the Secretary's and said third parties' own oil pollution removal efforts.

ing the air on the day after the initial dumping, the court opined:

> While Dover cannot be strictly liable for an unauthorized act caused or allowed by someone else, it may have a duty to use the care of a reasonable renderer in disposing of the unauthorized material. Failure to use such care may make the odor caused by the initial unauthorized act Dover's responsibility. If it were negligent in this regard, it could be found to be in violation of the statute.

*Id.* The court remanded the case to the trial court for a determination of whether the operator had been negligent in this regard.

Delaware liberally interprets the court's holding in *Dover Products* as imposing liability "not only from the discharge of a pollutant, but also from the failure to abate that incident." (D.I. 182 at 6). Even assuming that the court's holding in *Dover Products* were as broad as Delaware purports it to be, the Court finds the state's reliance on this case to be misplaced.

The relevant statutory and regulatory authority upon which the Delaware Supreme Court relied in *Dover Products* is distinguishable from the statute at bar. Specifically, in *Dover Products* the court stated that "[t]he precise basis for Dover's violation of § 6005 [of DECA] was § 2.1 of Regulation No. XIX, which reads: '*No person shall cause or allow the emission of an odorous air contaminant such as to cause a condition of air pollution.*'" 428 A.2d at 18–19 (emphasis supplied). Therefore, the legal authority at issue in *Dover Products* expressly provided that a violation occurs when a person " 'allow[s] the emission of an odorous air contaminant such as to cause a condition of air pollution.' " *Id.*

In the instant case and with respect to the Act (DOPLA) presently under consideration, there is nothing in the statute imposing liability for "allowing oil to remain in the water so as to cause a condition of water pollution", except section 6204, which is not applicable here. If the provisions of DOPLA applicable in the case at bar contained any such language, the result reached herein would be different. Since DOPLA does not contain any such language, except arguably in section 6204, the Court is compelled to conclude that civil penalties may be imposed under DOPLA section 6203 and section 6205(a) only as to each day during which oil is "discharged" from a vessel thereby causing an "incident."

*Conclusion*

For the foregoing reasons, the Court finds that Delaware is entitled to receive civil penalties under section 6205(a) of the Delaware Oil Pollution Liability Act only with respect to each day during which it is proven that the PRESIDENTE RIVERA "discharge[d] ... oil which caus[ed] an incident...." 7 Del.C. § 6203. Accordingly, Delaware's motion for partial summary judgment will be denied. The Court's prior decision finding that Limitation Plaintiff is liable to Delaware for civil penalties under the Delaware Oil Pollution Liability Act will be reaffirmed, but said penalties are recoverable only as to each day during which Delaware proves that the PRESIDENTE RIVERA actually discharged oil.